**FILED**

AUG 0 4 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 14 CR 497 |
| v. | Violations: Title 18, United States Code, Sections 371, 1546(a), 1622, and 2 |
| ROBERT DEKELAITA and YOUSIF YOUSIF | **SECOND SUPERSEDING INDICTMENT** |

**COUNT ONE**

JUDGE KENNELLY

The SPECIAL JUNE 2015 GRAND JURY charges:

MAGISTRATE JUDGE VALDEZ

1.    At times material to this indictment:

a.    United States Citizenship and Immigration Services ("USCIS") was a component of the Department of Homeland Security and an agency of the executive branch of the United States. USCIS was formerly known as Immigration and Naturalization Service prior to the creation of the Department of Homeland Security in March 2003. USCIS, among other things, was responsible for administering the policies and laws by which foreign nationals could apply for legal status in the United States, including applications for asylum, permanent residency, and citizenship.

b.    Under United States immigration law, foreign nationals seeking asylum in the United States were required, either personally or through an attorney, to complete an "Application for Asylum and for Withholding of Removal, Form I-589", hereinafter referred to as Form I-589, and submit it to USCIS. The Form I-589 required a detailed and specific account of the basis of the claim to asylum, detailed personal history data, and a listing of the applicant's travel history. If the Form I-589 was prepared by an attorney, the preparer is required to set forth his name and address on the form. The foreign national and preparer were both required to sign the form under penalty of perjury.

c.      Pursuant to United States immigration law, to obtain asylum in the United States, a foreign national was required to show that he suffered persecution in his home country of origin on account of race, religion, nationality, political opinion, or membership in a particular social group, or had a well-founded fear of persecution if he were to return to such country.  A person was not qualified for asylum if: (1) he had legal status, such as permanent resident status or citizenship, in a country other than his home country to where he could return; or (2) if he failed to file for asylum within one year of entering the United States, absent extraordinary circumstances.

d.      After the Form I-589 was submitted, the foreign national was interviewed under oath by a USCIS officer to determine whether the applicant qualified for asylum.  The foreign national's attorney was permitted to be present for the interview.

e.      If the foreign national did not speak English, the foreign national was required to bring his own interpreter.  The interpreter was required to sign a form under the penalty of perjury that he was providing a true and accurate translation of the foreign national's answers to the asylum officer's questions.

f.      If a foreign national was granted asylum, he was entitled to legally reside and work in the United States.  He would receive a completed Form I-94 from USCIS that reflected his new legal status.

g.      After holding a Form I-94 for one year, an applicant could apply for lawful permanent resident status by filling out a Form I-485 and submitting it to USCIS.  If the officer reviewing the Form I-485 found that the applicant was qualified, the applicant was granted lawful permanent resident status.  A permanent resident could, by filling out a form N-

400 and submitting it to USCIS, apply for citizenship after being a lawful permanent resident for at least five years.

        h.      If the asylum officer rejected a foreign national's asylum request for asylum, the case would be referred to an immigration judge at the Executive Office for Immigration Review ("EOIR"). After a contested hearing, the immigration judge could grant or deny the application for asylum.

        i.      Defendant ROBERT DEKELAITA was an immigration attorney licensed under the law of Illinois and the proprietor of R.W. DeKelaita & Associates, LLC, with offices in Skokie, Lincolnwood, and Morton Grove, Illinois.

        j.      Defendant YOUSIF YOUSIF was an interpreter that contracted with DEKELAITA and his firm. YOUSIF spoke multiple languages, including Assyrian. YOUSIF provided translation services for DEKELAITA's clients.

        k.      Defendant Adam Benjamin was an interpreter that contracted with DEKELAITA and his firm. Benjamin spoke multiple languages, including Assyrian. Benjamin provided translation services for DEKELAITA's clients.

        l.      Attorneys A and B were employed as associates of R.W. DeKelaita Law Offices in 2010 and 2011 and worked under the direction and supervision of DEKELAITA. Attorneys A and B were licensed to practice law in the state of Illinois.

2.      From no later than in or about 2000 and continuing until at least 2011, at Chicago, Skokie, Lincolnwood, and Morton Grove, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT DEKELAITA and
YOUSIF YOUSIF,

defendants herein, and Adam Benjamin, together with others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to commit an offense against the United States, namely to:

a.      knowingly obtain and attempt to obtain Form I-94s, which were documents prescribed by statute and regulation as evidence of authorized stay in the United States, knowing them to have been procured by means of any false claim and statement and to have otherwise been procured by fraud, in violation of Title 18, United States Code, Section 1546(a) ¶ 1;

b.      knowingly subscribe as true, any false statement with respect to a material fact in any application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly present any other document which contains any such false statement and fails to contain any reasonable basis in law and fact, namely Form I-589s and accompanying documentation, in violation of Title 18, United States Code, Section 1546(a) ¶ 4; and

c.      knowingly procure and attempt to procure, contrary to law, the naturalization of any person, and documentary and other evidence of naturalization and of citizenship, in violation of Title 18, United States Code, Section 1425(a).

<u>Manner and Means of the Conspiracy</u>

3.      It was part of the conspiracy that defendants DEKELAITA, YOUSIF, Benjamin, and others known and unknown to the Grand Jury agreed with each other to submit false information to USCIS on behalf of foreign nationals who were clients of DEKELAITA's law firm, coach these clients on how to best present the false information to an asylum officer, and represent these clients in their presentation of false information under oath during the asylum interviews in exchange for monetary payments from the clients.

4.      It was further part of the conspiracy that defendant DEKELAITA conducted screening interviews of his clients to determine what information regarding the clients' background may bar the client from lawfully receiving asylum.

5.      It was further part of the conspiracy that defendant DEKELAITA completed Form I-589s on behalf of his clients using false information, such as false names, false dates of travel, false dates of entry into the United States, false information about foreign citizenship, and false family history, and then submitted these forms to USCIS.

6.      It was further part of the conspiracy that defendant DEKELAITA wrote and created false asylum statements detailing non-existent accounts of purported religious persecution, including fictitious accounts of rape and murder, and attached these statements to the Form I-589s he submitted on behalf of his clients.

7.      It was further part of the conspiracy that defendant DEKELAITA, and Attorneys A and B acting at DEKELAITA's direction, prepared and submitted falsely created affidavits, baptismal certificates, identity documents, and other documents to USCIS and EOIR on behalf of their clients.

8. It was further part of the conspiracy that without their knowledge or permission, defendant DEKELAITA signed his clients' names on certain Form I-589s.

9. It was further part of the conspiracy that defendants DEKELAITA and YOUSIF, Benjamin, and others known and unknown to the Grand Jury, instructed DEKELAITA's clients to memorize fictitious information on their Form I-589s and accompanying asylum statements.

10. It was further part of the conspiracy that defendants DEKELAITA and YOUSIF, Benjamin, and others known and unknown to the Grand Jury, facilitated and assisted DEKELAITA's clients in memorizing the fictitious information on their Form I-589s and accompanying asylum statements prepared for their asylum interviews.

11. It was further part of the conspiracy that defendants DEKELAITA and YOUSIF, Benjamin, and DEKELAITA's clients presented the false information outlined in their Form I-589s to asylum officers at the clients' asylum interviews.

12. It was further part of the conspiracy that defendant YOUSIF and Benjamin provided false translations during asylum interviews. Specifically, defendant YOUSIF and Benjamin knowingly and intentionally mistranslated answers given by the clients and added testimony not actually stated by the clients during the course of the asylum interviews, in an effort to secure asylum for the clients.

13. It was further part of the conspiracy that defendants DEKELAITA and YOUSIF, Benjamin, and others agreed and intended that DEKELAITA's clients would successfully obtain asylum, would successfully receive Form I-94s, and would use this status to seek to obtain lawful permanent residence in the United States and naturalization as United States citizens.

<u>Overt Acts</u>

14.    In furtherance of the conspiracy and to effect its unlawful objectives, defendants DEKELAITA and YOUSIF committed and caused to be committed the following overt acts, among others:

<u>Client L.K.</u>

a.    On or about October 18, 2000, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client L.K.;

b.    On or about November 28, 2000, defendants DEKELAITA and YOUSIF instructed Client L.K. regarding what falsehoods to present during his asylum interview;

c.    On or about November 29, 2000, defendants DEKELAITA and YOUSIF helped Client L.K. present this false information to an asylum officer;

d.    On or about April 5, 2002, Client L.K., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

<u>Client R.E.</u>

e.    On or about March 26, 2001, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client R.E.;

f.    On or about May 1, 2001, defendants DEKELAITA and YOUSIF helped Client R.E. present false information to an asylum officer;

g.    On or about June 10, 2002, Client R.E., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

7

h.      On or about October 30, 2009, Client R.E., using his fraudulently obtained permanent resident status, submitted a Form N-400 to USCIS seeking United States citizenship;

Client S.S.

i.      On or about November 6, 2001, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client S.S.;

j.      On or about December 11, 2001, defendant YOUSIF instructed Client S.S. regarding what falsehoods to present during his asylum interview;

k.      On or about December 12, 2001, defendants DEKELAITA and YOUSIF helped Client S.S. present this false information to an asylum officer;

l.      On or about November 10, 2004, Client S.S., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

m.      On or about April 18, 2014, Client S.S., using his fraudulently obtained permanent resident status, submitted a Form N-400 to USCIS seeking United States citizenship;

Client S.M.

n.      On or about March 25, 2002, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client S.M.;

o.      On or about April 30 and May 1, 2002, defendants DEKELAITA and YOUSIF instructed Client S.M. regarding what falsehoods to present during his asylum interview;

p. On or about May 1, 2002, defendants DEKELAITA and YOUSIF helped Client S.M. present this false information to an asylum officer;

q. On or about May 1, 2002, defendant YOUSIF falsely translated the testimony of Client S.M. during his asylum interview;

Client S.D.S.H.

r. On or about May 7, 2002, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client S.D.S.H.;

s. On or about June 11, 2002, defendant DEKELAITA instructed Client S.D.S.H. regarding what falsehoods to present during his asylum interview;

t. On or about June 11, 2002, defendant DEKELAITA helped Client S.D.S.H. present this false information to an asylum officer;

u. On or about May 1, 2006, Client S.D.S.H., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

v. On or about July 28, 2011, Client S.D.S.H., using his fraudulently obtained permanent resident status, submitted a Form N-400 to USCIS seeking United States citizenship;

Client R.J.

w. On or about January 7, 2003, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client R.J.;

x.      On or about February 18, 2003, defendant YOUSIF instructed Client R.J. regarding what falsehoods to present during her asylum interview;

y.      On or about February 19, 2003, defendants DEKELAITA and YOUSIF helped Client R.J. present this false information to an asylum officer;

z.      On or about April 8, 2004, Client R.J., using her fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

aa.     On or about September 7, 2010, Client R.J., using her fraudulently obtained permanent resident status, submitted a Form N-400 to USCIS seeking United States citizenship;

Client R.J-C.

bb.     On or about April 9, 2003, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client R.J-C.;

cc.     On or about May 28, 2003, defendants DEKELAITA and YOUSIF instructed Client R.J. regarding what falsehoods to present during her asylum interview;

dd.     On or about May 29, 2003, defendants DEKELAITA and YOUSIF helped Client R.J-C. present this false information to an asylum officer;

ee.     On or about May 29, 2003, defendant YOUSIF falsely translated the testimony of Client R.J-C. during her asylum interview;

ff.     In or about November 2010, at the direction of defendant DEKELAITA, Attorney A created an affidavit of an individual falsely claiming to know when Client R.J-C. entered the United States, and subsequently mailed it to Client R.J-C.;

10

gg.    On or about February 10, 2011, at the direction of defendant DEKELAITA, Attorney B submitted a fraudulent baptismal certificate on behalf of Client R.J-C. to EOIR, knowing it to contain false information;

Client L.J.

hh.    On or about January 3, 2006, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client L.J.;

ii.    On or about February 1, 2006, defendant DEKELAITA and Benjamin instructed Client L.J. regarding what falsehoods to present during his asylum interview;

jj.    On or about February 1, 2006, defendant DEKELAITA and Benjamin helped Client L.J. present this false information to an asylum officer;

Client M.S.

kk.    On or about July 26, 2006, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client M.S.;

ll.    On or about August 28, 2006, defendant DEKELAITA and Benjamin instructed Client M.S. regarding what falsehoods to present during his asylum interview;

mm.    On or about August 29, 2006, defendant DEKELAITA and Benjamin helped Client M.S. present this false information to an asylum officer;

nn.    On or about October 9, 2007, Client M.S., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

Client L.M.

oo.     On or about July 28, 2006, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client L.M.;

pp.     On or about August 29, 2006, defendant DEKELAITA and Benjamin instructed Client L.M. regarding what falsehoods to present during his asylum interview;

qq.     On or about August 30, 2006, defendant DEKELAITA and Benjamin helped Client L.M. present this false information to an asylum officer;

Client N.N.

rr.     On or about November 16, 2006, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client N.N.;

ss.     On or about January 3, 2007, defendant DEKELAITA and Benjamin helped Client N.N. present this false information to an asylum officer;

tt.     On or about May 2, 2008, Client N.N., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

Client F.R.

uu.     On or about October 22, 2008, Benjamin helped Client F.R. present false information to an asylum officer;

vv.     On or about October 22, 2008, Benjamin falsely translated the testimony of Client F.R. during his asylum interview;

<u>Client F.E.</u>

ww.     On or about April 2, 2009, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client F.E.;

xx.     On or about May 11, 2009, defendant DEKELAITA and Benjamin instructed Client F.E. regarding what falsehoods to present during his asylum interview;

yy.     On or about May 12, 2009, defendant DEKELAITA and Benjamin helped Client F.E. present this false information to an asylum officer;

<u>Client M.J.</u>

zz.     On or about September 10, 2009, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client M.J.;

aaa.     On or about October 14, 2009, defendant DEKELAITA and Benjamin helped Client M.J. present this false information to an asylum officer;

bbb.     On or about October 22, 2010, Client M.J., using her fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

<u>Client H.A.</u>

ccc.     On or about November 16, 2009, defendant DEKELAITA submitted a Form I-589 containing false information and an accompanying false asylum story to USCIS on behalf of Client H.A.;

ddd.     On or about December 21, 2009, defendant DEKELAITA and Benjamin instructed Client H.A. regarding what falsehoods to present during his asylum interview;

13

eee.   On or about December 22, 2009, defendant DEKELAITA and Benjamin helped Client H.A. present this false information to an asylum officer;

fff.   On or about January 22, 2011, Client H.A., using his fraudulently obtained asylum status, submitted a Form I-485 to USCIS seeking permanent resident status;

All in violation of Title 18, United States Code, Section 371.

14

## COUNT TWO

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      The allegations in paragraph 1 of Count One of this indictment are incorporated here.

2.      On or about September 10, 2009, at Chicago, in the Northern District of Illinois and elsewhere,

ROBERT DEKELAITA,

defendant herein, knowingly attempted to obtain a Form I-94 on behalf of Client M.J., which was a document prescribed by statute and regulation as evidence of authorized stay in the United States, knowing it to have been procured by means of any false claim and statement, and to have otherwise been procured by fraud, namely by filing a Form I-589 and accompanying documentation that falsely claimed, among other things, that: (1) Client M.J. did not have legal status in a country other than Iraq; (2) Client M.J.'s husband was threatened and attempted to be kidnapped by Islamic extremists; and (3) Client M.J.'s daughter was threatened many times that if she did not convert to Islam, she would be kidnapped and killed;

In violation of Title 18, United States Code, Section 1546(a) ¶ 1 and Section 2.

15

## **COUNT THREE**

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     The allegations in paragraph 1 of Count One of this indictment are incorporated here.

2.     On or about September 10, 2009, at Chicago, in the Northern District of Illinois and elsewhere,

ROBERT DEKELAITA,

defendant herein, knowingly subscribed as true, any false statement with respect to a material fact in any application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly presented any other document which contains any such false statement and fails to contain any reasonable basis in law and fact, namely a Form I-589 and accompanying documentation that falsely claimed, among other things, that: (1) Client M.J. did not have legal status in a country other than Iraq; (2) Client M.J.'s husband was threatened and attempted to be kidnapped by Islamic extremists; and (3) Client M.J.'s daughter was threatened many times that if she did not convert to Islam, she would be kidnapped and killed;

In violation of Title 18, United States Code, Section 1546(a) ¶ 4 and Section 2.

## COUNT FOUR

The SPECIAL JUNE 2015 GRAND JURY further charges:

On or about October 14, 2009, at Chicago, in the Northern District of Illinois and elsewhere,

ROBERT DEKELAITA,

defendant herein, procured another, namely Client M.J., to commit perjury during an asylum interview, namely the following false statements: (1) Client M.J. did not have legal status in a country other than Iraq; (2) Client M.J.'s husband was threatened and attempted to be kidnapped by Islamic extremists; and (3) Client M.J.'s daughter was threatened many times that if she did not convert to Islam, she would be kidnapped and killed;

In violation of Title 18, United States Code, Section 1622.

## COUNT FIVE

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.     The allegations in paragraph 1 of Count One of this indictment are incorporated here.

2.     On or about November 16, 2009, at Chicago, in the Northern District of Illinois and elsewhere,

ROBERT DEKELAITA,

defendant herein, knowingly attempted to obtain a Form I-94 on behalf of Client H.A, which was a document prescribed by statute and regulation as evidence of authorized stay in the United States, knowing it to have been procured by means of any false claim and statement, and to have otherwise been procured by fraud, namely by filing a Form I-589 and accompanying documentation that falsely claimed, among other things, that: (1) Client H.A.'s brother's partner was killed; (2) Client H.A's brother's house was gunned down; (3) Client H.A.'s house was burned down by Muslim extremists; (4) Client H.A.'s brother's name was put on an elimination list; and (5) Client H.A.'s father was executed;

In violation of Title 18, United States Code, Section 1546(a) ¶ 1 and Section 2.

## <u>COUNT SIX</u>

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      The allegations in paragraph 1 of Count One of this indictment are incorporated here.

2.      On or about November 16, 2009, at Chicago, in the Northern District of Illinois and elsewhere,

### ROBERT DEKELAITA,

defendant herein, knowingly subscribed as true, any false statement with respect to a material fact in any application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly presented any other document which contains any such false statement and fails to contain any reasonable basis in law and fact, namely a Form I-589 and accompanying documentation that falsely claimed, among other things, that: (1) Client H.A.'s brother's partner was killed; (2) Client H.A's brother's house was gunned down; (3) Client H.A.'s house was burned down by Muslim extremists; (4) Client H.A.'s brother's name was put on an elimination list; and (5) Client H.A.'s father was executed;

In violation of Title 18, United States Code, Section 1546(a) ¶ 4 and Section 2.

## COUNT SEVEN

The SPECIAL JUNE 2015 GRAND JURY further charges:

On or about December 22, 2009, at Chicago, in the Northern District of Illinois and elsewhere,

ROBERT DEKELAITA,

defendant herein, procured another, namely Client H.A., to commit perjury during an asylum interview, namely the following false statements: (1) Client H.A.'s brother's partner was killed; (2) Client H.A's brother's house was gunned down; (3) Client H.A.'s house was burned down by Muslim extremists; (4) Client H.A.'s brother's name was put on an elimination list; and (5) Client H.A.'s father was executed;

In violation of Title 18, United States Code, Section 1622.

## COUNT EIGHT

The SPECIAL JUNE 2015 GRAND JURY further charges:

1.      At times material to this indictment:

      a.      Under United States immigration laws, a foreign national who was married to a United States citizen could obtain legal permanent resident status in the United States, provided that the marriage had been entered into in good faith and that the United States citizen had not entered into the marriage in exchange for something of value, such as money, or for the sole purpose of enabling the foreign national to obtain legal permanent resident status in the United States;

      b.      United States Citizenship and Immigration Services ("USCIS") was a component of the Department of Homeland Security and an agency of the executive branch of the United States. USCIS, among other things, was responsible for adjudicating applications for legal permanent residency status submitted by foreign-born nationals who claimed to have entered into legitimate marriages with United States citizens;

      c.      In order for a foreign national to obtain permanent resident status on the basis of marriage to a United States citizen, the United States citizen spouse was required to file a "Form I-130 Petition for Alien Relative" (hereinafter referred to as "Form I-130") on behalf of the foreign national. The foreign national's spouse was required to certify that he or she was in fact a United States citizen spouse, to provide certain background information about the marriage, such as the location of the marital residence, and to certify that the marriage was not entered into for purposes of evading immigration laws. The Form I-130 formed the basis for the adjustment of the foreign national's status to a legal permanent resident.

d.     After the Form I-130 was submitted, a USCIS officer would conduct interviews of the foreign national and/or United States citizen spouse to determine the validity of the claimed marriage;

e.     Defendant ROBERT DEKELAITA was an immigration attorney licensed under the law of Illinois and the proprietor of R.W. DeKelaita & Associates, LLC, with offices in Skokie, Lincolnwood, and Morton Grove, Illinois. DEKELAITA assisted his clients, who were foreign-born nationals, to complete necessary forms to become legal permanent residents of the United States on the basis of marriage to a United States citizen, including Forms I-130s. After completing the forms, DEKELAITA submitted and caused these documents to be submitted, on behalf of his clients, to USCIS to begin the official proceeding to determine whether to grant the applications and petitions of the foreign-born nationals and United States citizens;

f.     Attorney A was employed as an associate of R.W. DeKelaita Law Offices in 2010 and 2011 and worked under the direction and supervision of DEKELAITA. Attorney A was licensed to practice law in the state of Illinois;

g.     Individual M.Y. was a foreign-born national;

h.     Individuals A.I. and W.G. were United States citizens.

2.      From no later than 2009 and continuing through in or about 2012, at Chicago, Skokie, Lincolnwood, and Morton Grove, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT DEKELAITA,

defendant herein, did knowingly conspire with Individuals M.Y., A.I., and W.G., and others known and unknown to the Grand Jury, to commit offenses against the United States, namely, to knowingly enter into marriages for the purpose of evading provisions of the immigration laws, namely Title 8, United States Code, Sections 1154 and 1186a, which provisions restrict the availability of legal permanent resident status, applied for on the basis of marriage to a United States citizen, to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value and not for the purpose of procuring the foreign national's admission as an immigrant, and to aid and abet the commission of said offense, in violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2.

3.      It was part of the conspiracy that DEKELAITA, together with others known and unknown to the Grand Jury, counseled Individual M.Y. and W.G. to have Individual M.Y. enter into a sham marriage for the purpose of evading the United States immigration laws.

4.      It was further part of the conspiracy that Individual W.G. arranged a fraudulent marriage between Individual M.Y., a foreign-born national, and Individual A.I., a United States citizen.

5.    It was further part of the conspiracy that DEKELAITA met with Individuals W.G. and M.Y. and told them what actions they needed to take to make the marriage appear legitimate to USCIS.

6.    It was further part of the conspiracy that DEKELAITA prepared and submitted, and caused to be prepared and submitted, immigration paperwork to USCIS for Individuals A.I. and M.Y., well knowing at the time that their marriage was fraudulent.

7.    It was further part of the conspiracy that Attorney A, acting at DEKELAITA's direction, facilitated and assisted Individual A.I. in memorizing information to make his marriage to Individual M.Y. appear legitimate during his interview with USCIS.

8.    It was further part of the conspiracy that Individual A.I. presented false information, namely, that his marriage to Individual M.Y. was legitimate, at his marriage interview with USCIS.

9.    It was further part of the conspiracy that DEKELAITA prepared and submitted, and caused to be prepared and submitted, affidavits from Individuals M.Y., A.I., and W.G. attesting that the marriage between Individuals M.Y. and A.I. was legitimate, well knowing at the time that their marriage was fraudulent.

Overt Acts

10.    In furtherance of the conspiracy and to effect its unlawful objectives, defendant DEKELAITA committed and caused to be committed the following overt acts, among others:

a.    In or about July 2009, Individuals M.Y. and W.G. came to R.W. DeKelaita & Associates, LLC, for assistance in obtaining legal resident status for Individual M.Y.  DEKELAITA advised Individuals M.Y. and W.G. that the easiest method of obtaining

24

legal permanent resident status for Individual M.Y. would be for her to marry a U.S. citizen, well knowing that the marriage would be fraudulent;

      b.    In or about July 2009, Individual W.G. arranged for Individual M.Y. to marry Individual A.I. Individual W.G. paid Individual A.I. approximately $15,300, in exchange for Individual A.I. entering into a fraudulent marriage with Individual M.Y.;

      c.    On or about July 21, 2009, Individuals M.Y. and A.I participated in a civil marriage ceremony in Chicago, Illinois, each well knowing at the time that their marriage was not entered into in good faith, was in exchange for something of value, and that the purpose of the marriage ceremony was to enable Individual M.Y. to obtain legal permanent resident status;

      d.    On or about November 9, 2009, DEKELAITA prepared and submitted, and caused to be prepared and submitted, a Form I-130 to USCIS, on behalf of Individuals M.Y. and A.I., making it appear that the marriage between Individuals M.Y. and A.I. was legitimate, well knowing at the time that the marriage was fraudulent;

      e.    In or about October 2010, Individuals A.I. and W.G. met with Attorney A, an employee of DEKELAITA, during which Attorney A coached Individual A.I. on how best to present false information to USCIS during his marriage interview;

      f.    On or about October 28, 2010, Individual A.I. participated in a marriage interview in Chicago, Illinois, in which he falsely held out his marriage to Individual M.Y. as one that was entered into in good faith, well knowing that the true purpose at the time of the marriage was to obtain legal permanent resident status for Individual M.Y.

g. On or about August 1, 2011, DEKELAITA prepared and submitted, and caused to be prepared and submitted, to USCIS a rebuttal on behalf of Individual A.I., in response to USCIS's notice of its deny to deny Individual A.I.'s Form I-130 petition. In the rebuttal, DEKELAITA represented that the marriage between Individuals A.I. and M.Y. was legitimate, well knowing at the time that their marriage was fraudulent;

h. In or about August 2011, DEKELAITA prepared and submitted, and caused to be prepared and submitted, to USCIS affidavits from Individuals M.Y., A.I., and W.G. attesting that the marriage between Individuals M.Y. and A.I. was legitimate, and that Individuals M.Y. and A.I. had resided together at a common address, well knowing at the time that their marriage was fraudulent and that Individuals M.Y. and A.I. had always maintained separate residences;

i. In August 2012, DEKELAITA prepared and submitted, and caused to be prepared and submitted, an appeal of USCIS's denial of Individual A.I.'s Form I-130 petition, in which DEKELAITA represented that the marriage between Individuals A.I. and M.Y. was legitimate, well knowing at the time that their marriage was fraudulent;

11. It was further part of the conspiracy that the conspirators would and did conceal and hide, and cause to be concealed and hidden, the purposes of the acts done in furtherance of the conspiracy;

In violation of Title 18, United States Code, Sections 371 and 2.

26

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2015 GRAND JURY further alleges:

1.     The allegations contained in Counts One, Two, Three, Five, Six, and Eight of this indictment are incorporated here by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(6)(A)(ii).

2.     As a result of his violations of Title 18, United States Code, Sections 1546(a) and 371, as alleged in the foregoing indictment,

ROBERT DEKELAITA,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6)(A)(ii), any and all right, title and interest in property, real and personal, that constitutes and is derived from and is traceable to the proceeds obtained directly and indirectly from the commission of the offense and that is used to facilitate, and is intended to be used to facilitate, the commission of the offense.

3.     The interests of defendant DEKELAITA subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(6)(A)(ii), include but are not limited to: approximately $73,290.

4.     If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant:

    a.     Cannot be located upon the exercise of due diligence;

    b.     Has been transferred or sold to, or deposited with, a third party;

    c.     Has been placed beyond the jurisdiction of the Court;

    d.     Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 18, United States Code, Section 982(a)(6)(A)(ii).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY